OPINION
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from the decision of the Portage County Municipal Court, granting defendant-appellee, Danielle Dohner's ("Dohner") motion to suppress. We reverse the decision of the trial court.
 {¶ 2} At approximately 3:06 a.m., on Saturday, October 5, 2002, Trooper Altman ("Altman") of the Ohio State Highway Patrol, observed Dohner's vehicle traveling toward him along State Route 43 in Brimfield Township, Ohio. Altman made a visual estimate of the speed of Dohner's vehicle as she passed him, and concluded that she was traveling in excess of the posted speed limit of 40 miles per hour. After confirming via radar that Dohner's vehicle was traveling 50 miles per hour, he immediately turned around, following directly behind her vehicle and activating the lights on his patrol car.
 {¶ 3} When Dohner came to a stop, Altman approached her vehicle. Dohner was in the driver's seat. She had a passenger with her. Altman asked Dohner for her license and registration, which she produced. When speaking with Dohner, Altman detected a strong odor of alcohol coming from the vehicle. He also observed that Dohner's eyes were bloodshot and glassy and that her speech was, at times, slow and deliberate. Suspecting that she was under the influence of alcohol, Altman directed Dohner to step out of her car and have a seat in the patrol car with him. When Altman asked her to get out of her vehicle, Dohner hesitated and Altman had to redirect her to go around to the front passenger seat of his patrol car. After Altman and Dohner entered the patrol car, he asked Dohner if she had been drinking and how much. Dohner replied that she had had three beers. As she spoke, Altman again detected the strong odor of alcohol.
 {¶ 4} On the basis of his observations, Altman asked Dohner to perform the Horizontal Gaze Nystagmus (HGN) Test, while seated in the vehicle. During Dohner's performance of the test, Altman observed all six clues indicating intoxication. Altman next asked Dohner to exit the vehicle, explaining that he wanted her to perform some field sobriety tests. Walking around to the rear of the patrol car for safety reasons, Altman then instructed Dohner as to the proper method of performing the one-leg stand test. Appearing to understand Altman's instructions, Dohner then performed the test, placing her foot on the ground on the fourth second of the thirty-second test. Altman testified that her performance on the one-leg stand test was "decent."
 {¶ 5} Finally, Altman asked Dohner to perform the walk-and-turn test. After giving her instructions as to how to perform the test and demonstrating it for her, Altman explained that since there was no line, she should walk as straight a line as possible. He then asked Dohner if she understood and she indicated that she did. Dohner then performed the walk-and-turn test, during which time Altman observed that she stepped off the line on the second of the first nine steps and that she lost her balance as she turned. Altman then asked Dohner to consent to a portable breath test, which gave a red failing light, but no digital readout. As the result of Dohner's performance on the tests and his observations, Altman arrested her for driving under the influence of alcohol, under R.C. 4511.19(A)(1), (3) and (C).
 {¶ 6} On January 27, 2003, Dohner filed a motion to suppress on the basis of State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212, alleging that the field sobriety tests were not conducted in strict compliance with National Highway Traffic Safety Administration ("NHTSA") standards. She argued that Altman either gave improper instructions or failed to give necessary instructions and also gave her incorrect information regarding the testing. The motion also stated that the absence of facts in the police report concerning the manner in which the tests were conducted was conclusive proof of non-compliance with procedures.
 {¶ 7} On April 2, 2003, the trial court held a suppression hearing on these issues. The trial court granted the motion to suppress the results of the HGN test on the grounds that it was not done according to NHTSA standards, since the defendant was in a seated position in the patrol car. The court allowed the results of the one-leg stand test, finding that the Altman had stated in his own testimony that Dohner had a good performance on the test. Finally, the court also allowed the results of the walk-and-turn test because "it is th[e] [c]ourt's opinion that the walk-and-turn test was done in a passing manner." In sum, the trial court found that Altman, though he had reasonable suspicion to make the stop, did not have probable cause to arrest Dohner for driving under the influence of alcohol.
 {¶ 8} The state now timely appeals, setting forth a single assignment of error:
 {¶ 9} "The trial court's decision granting Appellee's motion to suppress for lack of probable cause to arrest for driving under the influence of alcohol was erroneous."
 {¶ 10} The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses.State v. Hill, 75 Ohio St.3d 195, 208, 1996-Ohio-222. Since the trial court is in the best position to resolve the factual issues, State v.Searls (1997), 118 Ohio App.3d 739, 741, citing State v. Mills
(1992), 62 Ohio St.3d 357, 366, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. Id. Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts. Id.
 {¶ 11} In the present case, the trial court excluded the results of the HGN test because Altman performed the test on Dohner while she was seated in the front seat of the patrol car. Neither party introduced the standards as evidence at the suppression hearing. However, we find no requirement in the NHTSA standards that the HGN test must be administered from a standing position. Since the test specifically examines eye function, standing and sitting has no bearing on the test. Furthermore, the standards give an officer some latitude to administer the test in a location where traffic lights and automobile lights do not interfere with the administration of the test.
 {¶ 12} In State v. Bresson (1990), 51 Ohio St.3d 123, the Ohio Supreme Court established that HGN test results were admissible as evidence to determine whether a person is under the influence of alcohol. The test is deemed admissible if the proper foundation was established as to the officer's knowledge of the test, his training, and his ability to interpret his observations. While not specifically addressing the issue at bar, the court upheld the lower court's admission of the test results when the test was performed with the suspect "sitting in the front seatof the patrol car." Id. at 128. (Emphasis added).
 {¶ 13} Following Bresson, some appellate courts in Ohio have allowed the results of the HGN test to be admitted into evidence when the suspect was seated in a vehicle. See, State v. Decker (Apr. 1, 2002), 5th Dist. No. 2001CA00254, 2002-Ohio-1584 (holding that results from the HGN test are admissible when the officer testified on cross-examination that he conducted the HGN test while both he and the defendant were seated in the front seat of the police vehicle, in accordance with both his training and the NHTSA manual.) But see, State v. Rader (Jun. 25, 2001), 5th Dist. No. 00CA72, 2001 Ohio App. LEXIS 2996 (holding that the results of the HGN test were not admissible where the accused was seated in the vehicle but the officer was trained to perform the test outside the vehicle.) Therefore, courts have found that in the absence of a specific requirement in the NHTSA manual, the admissibility of the results of the HGN test are dependent on how the officer is trained to administer them and whether the officer's actions complied with his training. We, therefore, hold that the results of the HGN test are admissible when the suspect is seated, provided the test is performed in conformity with the officer's training and the standards outlined in the NHTSA manual.
 {¶ 14} Altman was questioned on proper procedures and testified about his knowledge of the necessary elements of each test. When discussing the HGN test, he spoke in detail about how he conducted the test. Altman also testified that he saw all six clues as outlined in the manual when testing Dohner. When cross-examined, Altman stated that he did not recall any specific requirement in the manual that the person tested be standing. He also testified that "I administered the test in the way I was trained to administer the test." In response, Dohner offered no evidence to show that Altman's training or the manner in which he conducted the test did not conform to NHTSA standards. We find the trial court's decision to exclude the results of the HGN test under these circumstances was not supported by competent and credible evidence.
 {¶ 15} Furthermore, the totality of the facts and circumstances surrounding the arrest still support a finding of probable cause to arrest Dohner for driving under the influence.
 {¶ 16} In Homan, 89 Ohio St.3d at 427, the court stated that, "in determining whether the police had probable cause to arrest the individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information * * * to cause a prudent person to believe that the suspect was driving under the influence." In making their determination, courts must "examine the totality of the facts and circumstances surrounding the arrest." Id. (citations omitted).
 {¶ 17} In State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, the Ohio Supreme Court held that, even if the actual test results were determined to be inadmissible, an officer may testify regarding observations made during a defendant's performance of nonscientific standard field sobriety tests. The court held that, in making such observations, the officer functions as a lay witness testifying as to whether an individual is intoxicated. Id. at 12. Therefore, under Schmitt and Homan, there is ample evidence, even when the results of the HGN test were excluded, to support a finding of probable cause that Dohner was driving while intoxicated.
 {¶ 18} In the instant matter, Altman established a reasonable suspicion that Dohner was operating a vehicle under the influence on the basis of her speeding, the fact that he pulled her over at 3:06 a.m. on a Saturday, her bloodshot and glassy eyes, her slow and deliberate speech, and the strong smell of alcohol emanating from her vehicle. He then asked Dohner to exit her vehicle and take a seat in the front passenger seat of his patrol car. As Dohner left the vehicle to comply with his request, Altman had to instruct her a second time as to where he wanted her to sit in the patrol car before she understood what he wanted her to do. When Dohner complied, Altman took a seat next to her in the patrol car and asked her if she had been drinking, at which time she had admitted to having three beers. As Dohner spoke, Altman again detected the strong odor of alcohol, this time coming directly from her as she spoke.
 {¶ 19} In addition, during the one-leg stand test, Altman observed that Dohner had to put her foot down on the fourth second of the required thirty second duration of the test to maintain her balance. During the performance of the walk-and-turn test, Altman first observed Dohner stepping off the line on the second step of the first nine steps and then losing her balance when she made the turn. This court has held that "[w]hile probable cause means more than bare suspicion, it means less than evidence that would justify conviction." State v. Hummel, 11th Dist. No. 2002-P-0060, 2003-Ohio-4602 at ¶ 28 (citations omitted). These observations, all allowable under Schmitt, are sufficient to establish probable cause for Dohner's arrest from the totality of the facts and circumstances.
 {¶ 20} For these reasons, the State's assignment of error is well taken. The judgment of the Portage County Municipal Court is reversed and remanded for proceedings consistent with this opinion.
Christley, J., concurs, O'Neill, J., dissents with a Dissenting Opinion.