OPINION
{¶ 1} Appellant, John M. Boczar, appeals from the trial court's judgment denying his motion to suppress evidence. For the following reasons, we affirm.
 {¶ 2} At 12:25 a.m. on August 3, 2003, appellant was driving southbound on State Route 45 when Trooper Scott Balcomb of the Ohio State Highway Patrol observed him exceeding the posted speed limit by 5 mph. Trooper Balcomb pulled onto the highway and began pursuing appellant.
 {¶ 3} Meanwhile, Sergeant George Biskup, Trooper Balcomb's supervisor, was traveling north on State Route 45. At approximately the same time Balcomb began his pursuit, Sergeant Biskup observed a vehicle weave half a car width over the center line of the highway. Biskup was forced to evasively swerve right to avoid the vehicle. Balcomb stopped his cruiser with the intent of pursuing the vehicle when he observed Balcomb's cruiser already in pursuit. Biskup followed Balcomb who ultimately pulled the vehicle over in a hotel parking lot.
 {¶ 4} After initiating the stop, Trooper Balcomb asked for appellant's license and registration. Appellant provided the information; however, Balcomb testified he noticed a "very strong" odor of alcoholic beverage radiating from appellant. At Balcomb's request, Biskup approached appellant and confirmed Balcomb's impressions. Appellant initially denied he had been drinking, and advised Balcomb that he was on his way home from work. At the suppression hearing, Balcomb testified that appellant's eyes were "glossy," and his speech was "very slow." However, the trooper did not note these observations in his report.
 {¶ 5} Balcomb asked appellant to exit the car and submit to field sobriety tests. Appellant acceded. Appellant exited the car with no obvious problem. Balcomb asked appellant again how much he had to drink. This time, appellant stated he had three beers and advised the trooper he was coming from Jewel's Dance Hall in Austinburg, Ohio. Balcomb then administered the Horizontal Gaze Nystagmus tests (HGN), the walk and turn test, and the one-leg stand test. Balcomb stated appellant exhibited four of a possible six clues of intoxication with respect to the HGN test. On the walk and turn test, Balcomb noted two clues and, on the one-leg stand test, noted only one clue. Trooper Balcomb then placed appellant under arrest. Appellant later submitted to a breathalyzer test which indicated a blood alcohol content of .117%.
 {¶ 6} On August 6, 2003, Trooper Balcomb filed the citation with the Ashtabula County Court, Western Division, charging appellant with one count of Operating a Motor Vehicle Under the Influence, in violation of R.C. 4511.19(A)(1) and one count of Operating a Motor Vehicle with a prohibited alcohol content in violation of R.C. 4511.19(A)(3). Appellant was not cited for the speed violation. Appellant was arraigned on August 7, 2003 and pleaded not guilty to both charges. On September 17, 2003, appellant filed a motion to suppress evidence and a hearing on the motion was held on December 30, 2003. On February 5, 2004, the trial court filed its judgment entry denying appellant's motion to suppress.
 {¶ 7} The matter was set for a bench trial on March 2, 2004, but continued at appellant's request. The court rescheduled the matter for a jury trial to be held on September 15, 2004; however, before trial, appellant withdrew his initial pleas of not guilty and entered a plea of no contest to one count of Operating a Motor Vehicle Under the Influence. Appellant now appeals and asserts three assignments of error for our review:
 {¶ 8} "[1.] The trial court erred to the prejudice of appellant in overruling appellant's motion to suppress."
 {¶ 9} Under his first assignment of error, appellant argues the trial court erred in finding the arresting officer possessed reasonable suspicion based upon articulable facts to detain appellant for purposes of conducting the field sobriety tests.
 {¶ 10} When considering a motion to suppress evidence, a trial court acts as the trier of fact and must weigh the evidence and judge witness credibility. State v. Dohner, 11th Dist. No. 2003-P-0059, 2004-Ohio-7242, at ¶ 10. An appellate court is bound to accept the trial court's factual determinations to the extent they are supported by competent, credible evidence. State v.Mills (1992), 62 Ohio St.3d 357, 366. After accepting the trial court's factual findings as true, an appellate court reviews the trial court's application of law de novo. Dohner, supra.
 {¶ 11} It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law. Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12. Where the officer witnesses a "minor traffic violation," the detention must be brief and limited to the issuance of a citation for the violation in question. State v.Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800. 8. However, because any further detention is a greater invasion into an individual's liberty interests, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. See, State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, 8. A court will analyze the reasonableness of the request from the circumstances in their totality viewed through the eyes of a reasonable and prudent police officer. State v. Dye, 11th Dist. No. 2001-P-0140, 2002-Ohio-7158, at ¶ 18.
 {¶ 12} In State v. Evans (1998), 127 Ohio App.3d 56, we noted a host of factors collected from various cases which may be considered by a court to determine whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:
 {¶ 13} "(1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor as described by the officer (`very strong,['] `strong,' `moderate,' `slight,' etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." Id. at fn. 2.
 {¶ 14} We point out that the foregoing factors are assistive guides in the determination of reasonable suspicion. Accordingly, no one factor is dispositive and, moreover, the list does not represent an exhaustive account of factors which can or should be considered.
 {¶ 15} In the instant matter, appellant argues, the trial court erred when it found Trooper Balcomb possessed reasonable suspicion to request him to perform the field sobriety tests. We disagree.
 {¶ 16} At the hearing, Trooper Balcomb testified he stopped appellant for speeding at approximately 12:25 a.m. on Sunday morning. Upon approaching appellant's vehicle, he noticed a very strong odor of alcoholic beverage emanating from appellant's person. Trooper Balcomb also testified appellant's eyes were "glossy" and his speech was "slow."
 {¶ 17} Sergeant Biskup testified he witnessed appellant's vehicle cross the center line of State Route 45. Biskup then observed Trooper Balcomb pursuing the vehicle. Biskup followed the trooper and assisted him at the stop. Biskup testified he also noticed appellant projected a strong odor of alcohol.
 {¶ 18} While appellant initially stated he had nothing to drink and was coming from work, he eventually admitted he had consumed three beers and had recently left Jewel's Dance Hall. The record indicates these admissions occurred after appellant was asked to exit the vehicle but before Balcomb administered the field sobriety tests.
 {¶ 19} In our view, the totality of the circumstances suggest Trooper Balcomb had reasonable suspicion based upon articulable facts to request appellant to perform the field sobriety tests. To wit, appellant was stopped at 12:25 a.m. on Sunday morning, two independent officers testified to a strong odor of alcoholic beverage emanating from appellant, Trooper Balcomb testified appellant's eyes were "glossy" and his speech "very slow," Sergeant Biskup testified he observed appellant drive left of center before the stop, and appellant admitted to consuming three beers and recently leaving a bar. Taken together, we believe the foregoing facts are sufficient to create a reasonable suspicion justifying Trooper Balcomb's request.
 {¶ 20} With this in mind, appellant draws our attention to this court's holding in State v. Brickman (June 8, 2001), 11th Dist. No. 2000-P-0058, 2001 Ohio App. LEXIS 2575. In Brickman,
we affirmed the trial court's determination that an investigating officer was not justified in further detaining appellee for field sobriety testing after an initial stop for speeding. At Brinkman's suppression hearing the officer testified he pulled Brinkman over for speeding at 8:47 p.m. on a Tuesday evening, the arresting office testified Brinkman smelled of alcohol, admitted to "having a beer," had red, glossy eyes and was driving erratically. However, on cross-examination, the officer conceded that the odor of alcohol was mild and acknowledged that his observations about appellee's eyes and reckless driving were not included in his incident report. Trial court sustained Brickman's motion to suppress based upon the impeached testimony of the arresting officer.
 {¶ 21} On appeal, we held:
 {¶ 22} "Courts generally approve an officer's decision to conduct field sobriety tests when the officer's decision was based on a number of factors. State v. Evans (1998),127 Ohio App.3d 56, 63. Officer Margoff's decision to investigate appellee for driving under the influence of alcohol was not based on a number of the factors set forth in Evans. * * *.
 {¶ 23} "* * * If the trial court had based its decision solely on Officer Margoff's testimony on direct examination, it could have concluded that he had reasonable suspicion to administer sobriety tests to appellee. However, appellee impeached that testimony with his police report that set forth the facts that he had stopped appellee for speeding, noticed a mild odor of alcohol, and that appellee admitted drinking but did not state that appellee had red, glossy eyes or had driven aggressively or erratically." Id. at 8-9.
 {¶ 24} In the instant matter, we have a similar testimonial problem as identified in Brickman. Specifically, Trooper Balcomb excluded from his report the fact that appellant possessed "glossy eyes" and his speech was "slow."[1] While defense counsel's impeachment had an impact upon Balcomb's credibility, we believe there were more factors present to justify Balcomb's suspicion. Specifically, Balcomb testified: (1) he pulled appellant over for speeding at 12:25 a.m. on Sunday morning; (2) appellant projected a "very strong" odor of alcoholic beverage; and (3) appellant initially denied having anything to drink, but then admitted to consuming three beers. Each of these facts appeared in the trooper's report.
 {¶ 25} Moreover, the trial court had the benefit of the testimony of Sergeant Biskup who confirmed Balcomb's perception of the odor of alcohol and further testified to the additional relevant fact that appellant had weaved left of center as he passed Biskup's cruiser. The information obtained from Sergeant Biskup regarding appellant's erratic driving was also in Balcomb's report. While defense counsel properly impeached Balcomb with the omissions in his report, other factors present in this case indicate Balcomb's suspicion regarding appellant's intoxication was reasonable.
 {¶ 26} In our view, the foregoing evidence, when viewed in the totality of the circumstances, demonstrates that Trooper Balcomb had reasonable suspicion based upon articulable facts to proceed with an investigative stop and request appellant to submit to the field sobriety tests. The trial court did not err in denying appellant's motion to suppress on this basis. Accordingly, appellant's first assignment of error is overruled.
 {¶ 27} Appellant's second assignment of error contends:
 {¶ 28} "[2.] The trial court erred in failing to suppress the results of standardized field sobriety tests which were not administered in strict compliance with the generally accepted testing standards set forth by the National Highway Traffic Safety Administration."
 {¶ 29} Under this assignment of error, appellant first alleges R.C. 4511.19(D)(4)(b), the statute modifying the standard of admissibility for field sobriety tests from strict compliance to substantial compliance, violates the Ohio Constitution. At base, appellant argues that State v. Homan, 89 Ohio St.3d 421,2000-Ohio-212 established an "evidentiary rule" for the standard of admissibility regarding field sobriety tests. As such, theHoman decision was based on an interpretation of Evid.R. 702 regarding the admissibility of expert testimony and therefore involves the "prescription" of a rule of court procedure. Appellant contends R.C. 4511.19(D)(4)(b) inappropriately reduces the standard of compliance with respect to the admissibility of field sobriety test results from "strict compliance," established by Homan, to "substantial compliance." Thus, appellant concludes, the General Assembly encroached upon an exclusive, enumerated power of the judicial branch.
 {¶ 30} We first note that appellant's constitutional issue was neither raised in his motion to suppress nor at the hearing on the motion. "Failure to raise at the trial court level the issue of constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure and therefore need not be heard for the first time on appeal."State v. Awan (1986), 22 Ohio St.3d 120, syllabus. The waiver doctrine, however, is discretionary. City of Willoughby Hills v.Sheridan, 11th Dist. No. 2002-L-125, 2003-Ohio-6672, at ¶ 13, citing In re M.D. (1988), 38 Ohio St.3d 149, syllabus. Under the current circumstances, we choose to exercise our discretion and shall therefore consider appellant's constitutional issue.
 {¶ 31} Before the enactment of S.B. 163, law enforcement officers were required to administer field sobriety tests in strict compliance with the procedures promulgated by the National Highway Traffic Safety Administration (NHTSA). Homan, supra, at paragraph one of the syllabus. The General Assembly subsequently enacted R.C. 4511.19(D)(4)(b) as part of S.B. 163. This statute provides, in relevant part:
 {¶ 32} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 33} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 34} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *.
 {¶ 35} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 36} In light of S.B. 163, testimony or other evidence of field sobriety tests done in substantial compliance with the NHTSA standards should be admitted as evidence if it is admissible pursuant to the Ohio rules of evidence. Once admitted, the trier of fact may accord it "whatever weight * * * [it] considers to be appropriate." State v. Phipps, 3d Dist. No. 2-03-39, 2004-Ohio-4400, at ¶ 7.[2]
 {¶ 37} We note that statutory acts enjoy a presumption of constitutionality. State v. Thompkins (1996),75 Ohio St.3d 558, 560. The party challenging the constitutionality of a statute bears the burden of proving his or her position beyond a reasonable doubt. Woods v. Telb, 89 Ohio St.3d 504, 511,2000-Ohio-171. In the instant matter, therefore, appellant must establish beyond a reasonable doubt that R.C. 4511.19(D)(4)(b) violates the doctrine of separation of powers.
 {¶ 38} In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule. We are aware of no specific evidentiary rule relating to the standard of admissibility required for field sobriety tests. Moreover, the court in Homan cited no specific rule of evidence in its opinion. Several other appellate districts have entertained the instant question and arrived at the same conclusion. SeePhipps, supra; State v. Miracle, 12th Dist. Nos. CA 2003-11-275 and CA 2003-11-7137; State v. Robinson, 5th Dist. No. 2004-CA-45, 160 Ohio App.3d 802, 2005-Ohio-2280; State v.Nutter, 128 Ohio Misc.2d 24, 2004-Ohio-3143.
 {¶ 39} Although Evid.R. 702 was not mentioned in Homan,
appellant maintains the court's decision was grounded on an implicit interpretation of Evid.R. 702 to the extent it focuses upon the reliability of testing procedures. We disagree.
 {¶ 40} While reliability is a necessary condition for expert testimony, it is not a sufficient condition. Before a court inquires into the reliability of expert testimony, the evidence must first require an expert as a condition precedent for its admissibility; to require an expert, the evidential content of the testimony must fall outside the ken or experience possessed by laypersons. Evid.R. 702(A). Because intoxication is not outside the knowledge and experience of lay persons, expert testimony on this issue is unnecessary. With this in mind and recognizing the "non-scientific" character of field sobriety tests, the Supreme Court of Ohio has indicated that the results of field sobriety tests are admissible without expert testimony. See, generally, State v. Bresson (1990), 51 Ohio St.3d 123. While reliability is sine qua non for the admissibility of expert testimony, observations and conclusions regarding intoxication are not matters which necessitate expert testimony. Accordingly, we believe the Evid.R. 702 debate extraneous to the issue under consideration and appellant's argument regarding Evid.R. 702 is off point.
 {¶ 41} It is also worth noting that appellant's general argument blurs the distinction between the judicial process of ruling on an issue (here, the issue of a standard of admissibility) and the formal process of creating an evidentiary rule. In Homan, the court considered the issue of what standard of compliance is required for admitting field sobriety test results. The holding was a result of a formal judicial proceeding, not the administrative power possessed by the judiciary to promulgate rules governing the courts. In order to properly engage in the latter process, the Supreme Court "is required to file proposed rules by January 15 of each year and those proposed rules will take effect on the first of July unless the General Assembly adopts a concurrent resolution of disapproval." Phipps, supra, at ¶ 10, citing Article 4, Section 5. The mere fact that the court rendered a holding which addressed an issue related to the admissibility of evidence does not mean it was exercising its formal "rule-making" authority under Ohio's Constitution.
 {¶ 42} Although the judiciary has exclusive power to promulgate evidentiary rules of procedure in its courts, the General Assembly did not infringe upon that authority by enacting S.B. 163. The rules of evidence are not a jointly exhaustive list governing evidentiary questions; rather, when no actual conflict is created, "`a specific statute can govern the admissibility of evidence rather than the rules of evidence.'" Phipps, supra, at ¶ 12, quoting State v. Thompson (Jan. 24, 1996), 9th Dist. No. 95CA006047, 1996 Ohio App. LEXIS 237. We therefore conclude that S.B. 163 simply replaced the standard of admissibility announced in Homan which had not been codified into a rule of evidence. Accordingly, we join the Third, Fifth, and Twelfth Appellate Districts in holding that the "substantial compliance" standard internal to R.C. 4511.19 does not violate the doctrine of separation of powers. Appellant has failed to meet his burden and therefore his argument is without merit.
 {¶ 43} Next appellant contends the trial court erred in its determination that the state had established clear and convincing evidence that the standardized field sobriety tests were conducted in substantial compliance. We disagree.
 {¶ 44} We first note the trial court did not explicitly hold Trooper Balcomb substantially complied with the NHTSA standards.[3] If a trial court does not explicitly rule on an issue or a motion, an appellate court will presume the trial court overruled the motion. See, e.g., State v. Mulhern, 4th Dist. No. 02CA565, 2002-Ohio-5982, at fn. 9, citing Takacs v.Baldwin (1995), 106 Ohio App.3d 196, 209. Accordingly, we need only consider whether the trial court's decision was supported by competent, credible evidence.
 {¶ 45} The state must put forth "some evidence that the field sobriety tests were conducted according to the NHTSA standards."State v. Bemiller, 5th Dist. No. 04CA0109, 2005-Ohio-4404, at ¶21; see also, State v. Nickelson (July 20, 2001), 6th Dist. No. H-00-036, 2001 Ohio App. LEXIS 3261; State v. Ryan, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803, at ¶ 25 (Hoffman, P.J. concurring and noting the state may satisfy its burden by a conclusory affirmation of the police officer the tests were administered in compliance with the NHTSA standards).
 {¶ 46} At the suppression hearing, the state presented evidence that Trooper Balcomb followed "the NHTSA's Guidelines" in administering the three field sobriety tests. The trooper then discussed the specific, step-by-step procedure he used in administering the tests to appellant. On cross-examination, defense counsel engaged Trooper Balcomb in a detailed dialogue as to whether he strictly complied with the NHTSA standards. While the record reveals the trooper did not "strictly" comply with certain subtle features of the guidelines, taken as a whole, we believe the court had competent, credible evidence before it supporting its judgment entry denying appellant's motion to suppress.
 {¶ 47} Appellant's second assignment of error is not well taken.
 {¶ 48} "[3.] The trial court erred in failing to weigh the credibility of Trooper Balcomb's testimony in determining whether the arresting officer had probable cause to arrest appellant for driving under the influence."
 {¶ 49} To determine whether an officer has probable cause to arrest an individual for DUI, we consider whether, at the time of arrest, the officer "had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe the suspect was driving under the influence." Homan, supra, at 427, citingBeck v. Ohio (1964) 379 U.S. 89, 91.
 {¶ 50} Appellant alleges the trial court's determination on the question of probable cause was not supported by competent, credible evidence. In support, appellant makes the speculative assertion that the trial court "refused" to evaluate the credibility of Trooper Balcomb's testimony.
 {¶ 51} While we acknowledge defense counsel did a fine job impeaching Trooper Balcomb's testimony, we do not believe the trial court's probable cause determination was a result of a failure to weigh the testimony. In its February 5, 2004 judgment entry, the trial court states:
 {¶ 52} "Defendant's final argument is that Trooper Balcolm [sic] lacked probable cause to arrest him for driving under the influence. In addition to the time of the violations, the location of the violations, Defendant's bad driving, the strong odor of alcohol about Defendant's person, Defendant's slow speech, and his glossy eyes, by the time Trooper Balcolm [sic] arrested Defendant he also had Defendant's admission to consuming three (3) beers at Jewels [sic] and the clues observed during Defendant's performance on the field sobriety tests to establish probable cause. Based upon the totality of the circumstances, probable cause for arrest was established."
 {¶ 53} The trial court heard both Trooper Balcomb's and Sergeant Biskup's testimony regarding the nuances of the stop. The court also heard defense counsel's impeachment of Balcomb's testimony. The trial court found Balcomb's testimony sufficiently credible in light of the impeached testimony. We cannot say the trial court erred in doing so. We believe the state put forth competent, credible evidence to demonstrate Trooper Balcomb had probable cause to arrest appellant for driving under the influence. Appellant's third assignment of error is overruled.
 {¶ 54} For the foregoing reasons, appellant's three assignments of error are without merit and the decision of the Ashtabula County Court, Western District, is hereby affirmed.
O'Toole, J., concurs in judgment only,
O'Neill, J., dissents with Dissenting Opinion.
[1] Trooper Balcomb testified that while appellant's speech was slow, it was not slurred. Moreover, on cross-examination the trooper indicated that slow speech is not necessarily indicative of intoxication at all.
[2] Subsequent to the enactment of S.B. 163, the Supreme Court of Ohio extended Homan's strict compliance standard to the admissibility of field sobriety tests results at trial. State v.Schmitt, 101 Ohio St.3d 79, 82, 2004-Ohio-37. Schmitt dealt with an arrest which took place prior to the passage of S.B. 163 and the court acknowledged its application was limited in light of S.B. 163.
[3] In its judgment entry, the trial court ruled that the revised version of R.C. 4511.19(D)(4)(b), prescribing substantial compliance with field sobriety testing procedures, supersededHoman and consequently controlled the analysis. However, the court did not expressly rule the officer substantially complied with the standards in question.