[Cite as *Parma Hts. v. Dedejczyk*, 2012-Ohio-3458.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97664

---

## CITY OF PARMA HEIGHTS

PLAINTIFF-APPELLEE

vs.

## MONIKA DEDEJCZYK

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Parma Municipal Court
Case Nos. 11 TRC 04142 and CRB 01650


**BEFORE:** Boyle, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 2, 2012

**ATTORNEY FOR APPELLANT**

Michael C. Asseff
159 Crocker Park Boulevard
Suite 400
Westlake, Ohio   44145

**ATTORNEY FOR APPELLEE**

Thomas J. Kelly
Prosecutor
City of Parma Heights
6281 Pearl Road
Parma Heights, Ohio   44130

MARY J. BOYLE, P.J.:

{¶1} After the trial court denied her motion to suppress, defendant-appellant, Monika Dedejczyk, pleaded no contest to operating a vehicle while under the influence of alcohol and/or drugs ("OVI"), operating a vehicle with a prohibited breath alcohol content ("BAC"), failure to obey a traffic control device, and making an improper turn. She appeals the trial court's judgment denying her motion to suppress, raising the following four assignments of error for our review:

"[1.] The trial court erred by failing to suppress all evidence obtained as a result of an illegal traffic stop.

"[2.] Even if the trial court correctly determined that the arresting officer possessed probable cause to initiate a traffic stop of defendant, the trial court erred in concluding, based on the arresting officer's testimony, that the officer possessed reasonable, articulable suspicion of impairment so as to expand the traffic stop into an investigatory search and seizure of defendant.

"[3.] Even if the trial court correctly found that the arresting officer possessed reasonable articulable suspicion of intoxication justifying the expanded investigatory search and seizure of appellant, the trial court nevertheless erred in finding that the arresting officer substantially complied with NHTSA standards with respect to his administration of field sobriety tests.

"[4.] Even if the arresting officer substantially complied with NHTSA standards, the officer observed insufficient clues of intoxication and therefore the trial court erred in determining that probable cause existed for the OVI arrest."

{¶2} Finding no merit to her appeal, we affirm.

<u>Procedural History and Factual Background</u>

{¶3} In April 2011, Dedejczyk was cited for (1) OVI in violation of R.C. 4511.19(A)(1)(a), (2) operating a vehicle with a prohibited BAC in violation of R.C. 4511.19(A)(1)(d), (3) failure to obey a traffic control device in violation of R.C. 4511.12, and (4) making an improper turn in violation of R.C. 4511.36(A)(2).

{¶4} Dedejczyk moved to suppress all evidence against her, arguing that the arresting police officer did not have reasonable suspicion to make the initial stop and that the field sobriety tests were not conducted in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") standards. The following facts were presented at the suppression hearing.

{¶5} Officer Luke Wittasek of the Parma Heights Police Department testified that he was on routine patrol in April 2011 around 1:00 a.m. when he observed Dedejczyk's vehicle stopped at a red light beside city hall. He explained that city hall is located on Pearl Road next to a plaza. City hall and the plaza share a traffic light to exit their parking areas onto Pearl Road. Officer Wittasek testified that Dedejczyk was exiting that parking area at the traffic light. There is at least one establishment that sells alcohol in the plaza, as well as an Arabica coffee shop.

**{¶6}** Officer Wittasek said that he observed Dedejczyk attempt to make a left-hand turn onto Pearl Road while the traffic light was still red. He stated that she "noticed that [she] couldn't make the turn because vehicles were coming both ways and [she] backed * * * up all the way back up into the lot there." Officer Wittasek said that Dedejczyk "was well past the middle of the intersection" before she backed into the parking area; Pearl Road is five lanes wide in front of city hall. Officer Wittasek breaked and waited for Dedejczyk to pull out again. When the light turned green, Dedejczyk turned left onto Pearl Road and Officer Wittasek followed her.

**{¶7}** Officer Wittasek testified that he observed Dedejczyk get "into the center turn lane just before York and [make] a wide turn going onto York Road using both lanes to turn." He stated that Dedejczyk "settled in the curb lane" after she turned. To be in compliance with Ohio intersection law, Officer Wittasek explained that Dedejczyk should have remained in the center lane as she turned. At that point, he initiated a traffic stop for two traffic violations: (1) turning left on a red light, and (2) "the wide turn" onto York Road.

**{¶8}** Officer Wittasek stopped Dedejczyk after she turned onto York Road. He approached the driver's side of her vehicle. He said that he smelled a strong odor of alcohol as he explained why he stopped her. Officer Wittasek said that Dedejczyk had glassy eyes and slightly slurred speech. He asked Dedejczyk if she had been drinking and she replied "no." But Officer Wittasek asked her why he could smell alcohol if she had not been drinking and at that point, Dedejczyk admitted to having two glasses of wine.

**{¶9}**  Officer Wittasek asked Dedejczyk to "submit to [a] portable breathalyzer," which she agreed to do.  Dedejczyk tested positive for alcohol.  He then conducted a couple "pre-exit" tests, including the finger dexterity test and the "ABC test."  Officer Wittasek explained that he was aware that these tests are not NHTSA compliant.  Based on the results of these "pre-exit" tests (which the trial court did not permit him to testify to), he conducted field sobriety tests.

**{¶10}** Officer Wittasek testified that he conducted the "eye test," or the Horizontal Gaze Nystagmas ("HGN") test, the one-leg-stand test, and the walk-and-turn test.  He further explained how he conducted each test and how Dedejczyk performed on each test.

**{¶11}** Regarding the HGN test, Officer Wittasek testified that he had Dedejczyk stand at "the military position of attention" with her hands on her face.  He then used his right index finger to check for lack of smooth pursuit, distinct and sustained nystagmus, maximum deviation, and onset nystagmus prior to 45 degrees.  He explained that in looking for smooth pursuit, he had Dedejczyk follow his finger with her left eye first for two seconds, and then for two seconds back.  He then repeated the test for her right eye. He then repeated the test for both eyes.  For distinct and sustained nystagmus and maximum deviation, Officer Wittasek explained that he takes his finger "all the way out" until the whites of the eyes are showing, and he counts for four seconds, and then he brings his finger slowly back to the middle.  He then repeats the test for both eyes.  For the onset nystagmus prior to 45 degrees, he stated that he moved his finger to Dedejczyk's shoulder until he began to get "jerking of the eyes which is the nystagmus," and then he

stopped, counted to four again, and then brought his finger back to the middle. He repeated the test for both eyes. Officer Wittasek testified that he obtained four of the six clues from testing Dedejczyk on the HGN test. He explained that Dedejczyk "had trouble following [his] finger" on the distinct and sustained nystagmus, so he was not able to obtain any clues for that test.

{¶12} With respect to the one-leg-stand test, Officer Wittasek testified that Dedejczyk was wearing heels. He asked her if she wanted to take them off, but she refused. He then had her stand with her feet together, with her arms down to her sides. He instructed her how to do the test, and then demonstrated how to do it. Officer Wittasek stated that Dedejczyk "was hiking up her skirt" and "continuously talking" while he was giving her instructions. He stated that he knew there were "several errors" on the test, but he could not remember what they were.

{¶13} On cross-examination, after reviewing the police report, Officer Wittasek agreed that Dedejczyk never put her foot down during the test. But he explained that she began miscounting after "one thousand eleven." He also said that she did not hold her arms down to her side like she is supposed to because she held onto her skirt the entire time.

{¶14} With respect to the walk-and-turn test, Officer Wittasek testified that he had Dedejczyk stand with her left foot in front of her right, with her feet heel-to-toe, and keep her arms down to her side. While she was in the starting position, he instructed her

verbally and then demonstrated the test to her. He could not remember the results of the test without looking at his report.

{¶15} On cross-examination, Officer Wittasek testified that he told Dedejczyk that she could take her high heels off during the walk-and-turn, but she refused at first. He said that Dedejczyk had a lot of trouble getting in the starting position and she lost her balance during the first test. She blamed it on her shoes, so she took them off. Then, Dedejczyk "took full, full stride steps down, did an improper turn and then came back with full steps." He explained that she did not walk heel-to-toe. He also said that she stepped off the line.

{¶16} After conducting the three tests, Officer Wittasek concluded that he had sufficient probable cause to arrest Dedejczyk for OVI. The record further reveals that Dedejczyk had a BAC of 0.143, which she does not challenge here.

{¶17} Dedejczyk testified that she had been at the Arabica coffee shop with a group of friends since 7:00 p.m. She left around 11:00 p.m. or midnight. When Dedejczyk exited the parking lot, she said that she left through the main entrance, where there was no traffic light.

{¶18} Easa Zayed testified that he was at the Arabica with Dedejczyk on the night she was arrested. He said that there is no traffic light at the main exit of the Arabica parking lot. But he testified that he does not exit that way; he exits directly onto York Road. On cross-examination, Zayed testified that he observed Dedejczyk drinking (but did not specify what she was drinking).

**{¶19}** The trial court denied Dedejczyk's motion to suppress, finding Officer Wittasek more credible than Dedejczyk. Specifically, the trial court found

> it is a question of credibility as to where she pulled out and the officer was quite clear there was a red light, he saw a green light, she had a red light, pulled out, how far she pulled out I'm not sure if she would have gone all the way to the yellow and came back or just enough to block traffic and came back but clearly she was going to run a red light and then saw better when cars were closing in on her and backed in. The officer then had [an] obligation to pull her over and investigate.

**{¶20}** The trial court further found that Officer Wittasek had reasonable suspicion to conduct field sobriety tests and that he conducted them in substantial compliance with NHTSA standards.

**{¶21}** After the trial court denied her motion, Dedejczyk pleaded no contest to the charges. It is from this judgment that she appealed.

## Standard of Review

> **{¶22}** Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶23}** However, with respect to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

## Warrantless Searches

{¶24} In her first two assignments of error, Dedejczyk raises issues relating to Officer Wittasek's initial stop of her and his conducting field sobriety tests.

{¶25} The Fourth Amendment of the United States Constitution, as well as Article I, Section 14, of the Ohio Constitution, guarantees

> the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶26} When a police officer stops an automobile and detains its occupants, a "seizure" is committed within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), paragraph two of the syllabus.

{¶27} It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimus traffic violation provides probable cause for a traffic stop." *Id.* at 9.

{¶28} Although probable cause "is certainly a complete justification for a traffic stop," it is not required. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. So long as "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8. Reasonable and articulable suspicion is obviously a lower standard than probable cause.

*See id.* at ¶ 23. To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity. *See State v. Williams*, 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108 (1990). "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶29} Once a driver has been lawfully stopped, however, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998), citing *State v. Yemma*, 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361 (Aug. 9, 1996). A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Dye*, 11th Dist. No. 2001-P-0140, 2002-Ohio-7158, ¶ 18.

{¶30} *Evans* lists a host of factors that courts may consider to determine whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:

> (1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed,

etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong,["] "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably.

*Id*. at fn. 2.

**{¶31}** The foregoing factors are merely assistive guides in the determination of reasonable suspicion. Accordingly, no one factor is dispositive and, moreover, the list does not represent an exhaustive account of factors that can or should be considered. *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 14, *aff'd*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155. Generally, courts approve a request to submit to field sobriety testing only where the officer based his or her decision on a number of these factors. *Evans* at 63.

## Initial Stop

**{¶32}** In her first assignment of error, Dedejczyk argues that Officer Wittasek did not have probable cause to stop her because she did not commit a traffic violation. She maintains that even accepting the trial court's finding of fact that she attempted to make a left turn at a red light, she asserts that she did not violate R.C. 4511.12(A) because she did not complete the turn onto Pearl Road. She further contends that she did not make an

improper turn onto York Road because Officer Wittasek admitted on cross-examination that she did not cross the center line of York when turning from Pearl onto York.

{¶33} R.C. 4511.12(A) provides that "[n]o pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device[.]" Officer Wittasek testified that Dedejczyk drove half way into the intersection at a red light, stopped, and backed into the parking lot when she saw oncoming traffic. Although the trial court could not determine how far Dedejczyk pulled out into the road, whether she went all the way to the yellow line or just enough to block traffic, it still found that she pulled out into traffic against the light — enough that she actually had to back up to get out of the way of oncoming traffic. These facts establish sufficient probable cause that Dedejczyk violated R.C. 4511.12(A). The statute does not require a completed turn. If we were to adopt Dedejczyk's interpretation of the statute, we would be adding elements to it that the General Assembly did not include.

{¶34} We note, however, that even if we agreed with Dedejczyk she did not violate R.C. 4511.12(A) because she did not completely run the red light, Officer Wittasek still had reasonable suspicion to stop her. Officer Wittasek testified that he observed Dedejczyk exit a plaza where at least one of the establishments serve alcohol at 1:00 a.m. He observed her pull into oncoming traffic against a traffic light, stop, and then back up from where she began. Officer Wittasek's testimony establishes specific and articulable facts that support a reasonable suspicion that the driver may be impaired such that the officer should investigate.

**{¶35}** Dedejczyk further contends that she did not make an improper turn onto York Road because Officer Wittasek admitted on cross-examination that she did not cross the center line of York Road when turning from Pearl onto York. Having found that Dedejczyk violated R.C. 4511.12(A), we need not address this issue because committing one traffic violation provides sufficient probable cause to stop a vehicle.

**{¶36}** Accordingly, we conclude that Officer Wittasek's initial stop of Dedejczyk was lawful. Dedejczyk's first assignment of error is overruled.

Expanding the Search

**{¶37}** In her second assignment of error, Dedejczyk argues that even if the initial stop was valid, Officer Wittasek did not have reasonable suspicion to further investigate and conduct field sobriety tests. Although Dedejczyk argued this in her motion to suppress, she abandoned it at trial, informing the trial court that she was only challenging the initial stop and whether the field sobriety tests were done in substantial compliance with NHTSA standards. Nonetheless, we will briefly address Dedejczyk's argument.

**{¶38}** Officer Wittasek testified that he observed Dedejczyk drive half way into Pearl Road against a red light, and then back up when she realized traffic was coming. He further testified that when he initially spoke to her, he smelled a strong odor of alcohol. He also noticed that she had glassy eyes and a slightly slurred speech. Officer Wittasek also asked Dedejczyk if she had been drinking. Although Dedejczyk initially replied that she had not, she later admitted to having two glasses of wine.

**{¶39}** After reviewing the record, we conclude that Officer Wittasek's request to perform field sobriety tests was reasonable based on the totality of the circumstances.

**{¶40}** Dedejczyk's second assignment of error is overruled.

Field Sobriety Tests

**{¶41}** In her third assignment of error, Dedejczyk argues that the trial court erred when it found that Officer Wittasek substantially complied with the NHTSA standards.

**{¶42}** In order for the results of field sobriety tests to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Clark*, 12th Dist. No. CA2009-10-039, 2010-Ohio-4567, ¶ 11. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 12th Dist. Nos. CA2008-10-118, CA2008-10-119, 2009-Ohio-3538, ¶ 26. The state may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. *State v. Boczar*, 113 Ohio St.3d, 2007-Ohio-1251, 863 N.E.2d 155, at ¶ 28.

**{¶43}** But even if a court finds that the officer did not substantially comply with the NHTSA standards (which would require the results of the tests to be excluded), the officer's testimony regarding the defendant's performance on nonscientific field sobriety tests is admissible under Evid.R. 701. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 14-15.

**{¶44}** Officer Wittasek testified at the suppression hearing as to his qualifications as a police officer and to his training in conducting field sobriety testing. He further testified how he conducted each test upon Dedejczyk and how she performed on each test.

1. HGN

> In conducting the HGN test, the NHTSA manual provides that "a police officer should instruct the suspect that [he is] going to check the suspect's eyes, that the suspect should keep [his] head still and follow the stimulus with [his] eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer is then to check the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees." The manual instructs the officer to repeat each of the three portions of the HGN test.
>
> > In addition, the NHTSA guidelines list certain approximate and minimum time requirements for the various portions of the test. For instance, when checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds. When checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. When checking for the onset of nystagmus prior to 45 degrees, the officer should move the stimulus from the suspect's eye to his shoulder at an approximate speed of four seconds.

(Internal citations omitted.) *Clark* at ¶ 22-23.

**{¶45}** Dedejczyk argues that Officer Wittasek did not substantially comply with the NHTSA standards because (1) he did not give Dedejczyk any instructions before performing the test, (2) he did not check for medical impairment, i.e., whether Dedejczyk's

pupils were equal size, whether resting nystagmus existed, nor did he check for equal tracking by both eyes, and (3) he did not count correctly for determining onset of nystagmus prior to 45 degrees because he testified that he held the count for four seconds once nystagmus was detected.

{¶46} After reviewing the record, we agree that Officer Wittasek did not testify to giving Dedejczyk instructions before performing the HGN test. But we disagree that he did not check for medical impairment. Officer Wittasek testified on cross-examination that he did check Dedejczyk for equal pupil size, resting nystagmus, and equal tracking, but he did not note it in his report. He explained that he must not have found anything unusual or else he would have written it in his report.

{¶47} With respect to onset of nystagmus prior to 45 degrees, the NHTSA manual instructs that an officer should move the stimulus toward the officer's right "at a speed that would take approximately four seconds for the stimulus to reach the edge of the suspect's shoulder," and if nystagmus (jerking) is observed, then the officer should "stop and verify that jerking continues." Officer Wittasek stated that he moved his finger to Dedejczyk's shoulder until he began to get "jerking of the eyes which is the nystagmus," and then he stopped, counted to four again, and then brought his finger back to the middle. The manual does not specify how long an officer must hold the stimulus in verifying that jerking continues. Thus, the fact that Officer Wittasek held it for four seconds was in substantial compliance with the NHTSA standards.

**{¶48}** Although Officer Wittasek did not testify that he gave Dedejczyk instructions for the HGN test, we conclude that he substantially complied with the standards. Although he was not able to complete the distinct and sustained nystagmus due to Dedejczyk not being able to follow, he substantially complied with onset of nystagmus prior to 45 degrees, lack smooth pursuit, and maximum deviation, finding four of the possible six clues for the HGN test.

2.      One-Leg-Stand Test

**{¶49}** In administering the one-leg-stand test, the NHTSA manual requires the officer to instruct subjects to begin the test with their feet together and keep their arms at their side for the entire test.   The officer must also tell the suspects that they must raise one leg, either leg, six inches from the ground and maintain that position while counting out loud for thirty seconds.   NHTSA standards provide that the counting should be done in the following manner: "one thousand and one, one thousand and two, until told to stop." *Clark*, 12th Dist. No. CA2009-10-039, 2010-Ohio-4567, at ¶ 36.

**{¶50}** Dedejczyk argues that Officer Wittasek did not substantially comply with the NHTSA standards because he failed to fully instruct her.   Specifically, he maintains that Officer Wittasek failed to instruct Dedejczyk that she must keep her hands to her sides at all times during the test.   He asserts that Officer Wittasek's failure was significant because he testified that she held onto her skirt throughout the test.

**{¶51}** Officer Wittasek testified that he had Dedejczyk stand with her feet together, with her arms down to her sides.   He stated that he gave her instructions on how to perform

the test, and then demonstrated how she should do it. We find Officer Wittasek's testimony sufficient to establish that he substantially complied with the NHTSA manual in giving instructions for the one-leg-stand test.

3. Walk-and-Turn Test

{¶52} Regarding the walk-and-turn test, the NHTSA manual states that an officer is required to first instruct the suspect of the initial positioning, which requires the suspect to stand with his arms down at his side, and to place his left foot on a line (real or imaginary). The suspect's right foot is to be placed on the line ahead of the left foot, with the heel of the right foot against the toe of the left foot. The suspect is then told to remain in that position while further instructions are given. These further instructions include the

> method by which the suspect walks while touching his heel to his toe for every step, counting the nine steps out loud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line. The officer is also told to demonstrate the instructions to ensure that the suspect fully understands.

*Clark,* 12th Dist. No. CA2009-10-039, 2010-Ohio-4567, at ¶ 43.

{¶53} Dedejczyk argues that Officer Wittasek "omitted substantial portions of the instructions required under the NHTSA manual." Officer Wittasek testified that during the walk-and-turn test, he had Dedejczyk stand with her left foot in front of her right, with her feet heel-to-toe, and keep her arms down to her side. While she was in the starting position, he instructed her verbally and then demonstrated the test to her. We find that Officer Wittasek's testimony was sufficient to establish that he substantially complied with the NHTSA manual regarding instructions for the walk-and-turn test.

**{¶54}** After reviewing Officer Wittasek's testimony, it is clear that he did not commit every detail of the NHTSA manual to memory, nor did he administer the three field sobriety tests in strict compliance with every detail in the NHTSA manual. Strict compliance is not the standard, however. Substantial compliance is sufficient. R.C. 4511.19(D)(4)(b); *Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155. Accordingly, we agree with the trial court that Officer Wittasek's testimony, taken as a whole, satisfies the substantial compliance requirement.

**{¶55}** Dedejczyk's third assignment of error is overruled.

Probable Cause to Arrest

**{¶56}** In her fourth assignment of error, Dedejczyk argues that there was no probable cause to arrest her for OVI. We disagree.

**{¶57}** Because an arrest is the ultimate intrusion upon a citizen's liberty, the arresting officer must have more than a reasonable, articulable suspicion of criminal activity. He must have probable cause to believe the individual has committed a crime. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). In determining whether the police had probable cause to arrest appellant for OVI, we must determine whether, at the moment of arrest, the police had information sufficient to cause a prudent person to believe that the suspect was driving under the influence. *Id.* at 91. A probable cause determination is based on the "totality" of facts and circumstances within a police officer's knowledge. *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997). While the odor of alcohol, glassy eyes, slurred speech, and other indicia of alcohol use by

a driver are, in and of themselves, insufficient to constitute probable cause to arrest, they are factors to be considered in determining the existence of probable cause. *Kirtland Hills v. Deir*, 11th Dist. No. 2004-L-005, 2005-Ohio-1563, ¶ 16.

{¶58} After reviewing the record in this case, we conclude that Officer Wittasek had probable cause to arrest Dedejczyk for OVI. He observed her pull out of a plaza — against a traffic light — with oncoming traffic. It was 1:00 a.m. She was pulling out of a plaza where there was at least one establishment that served alcohol. He then followed her and observed her make a wide left turn. After she turned onto York Road, he stopped her. Upon approaching her in her car, he testified that he smelled a strong odor of alcohol coming from her person and the car. She had glassy eyes and slightly slurred speech. Officer Wittasek also asked Dedejczyk if she had been drinking; she initially replied no, but later admitted to having two glasses of wine. And Officer Wittasek performed field sobriety tests on Dedejczyk, which she failed. These facts support sufficient probable cause to arrest for OVI.

{¶59} Accordingly, Dedejczyk's fourth assignment of error is overruled.

{¶60} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART
WITH SEPARATE OPINION


SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

I concur fully with the judgment and analysis of the majority in all areas except the majority's finding with respect to the HGN test.   I would suppress those results, but the outcome is no different, as there was ample evidence of impairment from the record in this case.   *State v. Mai,* 2d Dist. No. 2005-CA-115, 2006-Ohio-1430.