[Cite as *Cleveland v. Cunningham*, 2018-Ohio-844.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105403**

**CITY OF CLEVELAND**

PLAINTIFF-APPELLEE

vs.

**TATIONA CUNNINGHAM**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2016 TRC 030852

**BEFORE:** McCormack, P.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 8, 2018

**ATTORNEY FOR APPELLANT**

Ayesha Bell Hardaway
Milton A. Kramer Law Clinic
11075 East Boulevard
Cleveland, OH 44106

Brian Unger
Samantha Weaver
Lauren Tuttle
Certified Legal Interns
Milton A. Kramer Law Clinic
11075 East Boulevard
Cleveland, OH 44106


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland Law Department

Kimberly G. Barnett-Mills
Chief Prosecutor

By:   Angela Rodriguez
Assistant City Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, OH 44113


TIM McCORMACK, P.J.:

{¶1} Defendant-appellant Tationa Cunningham appeals from her conviction for operating a vehicle under the influence of alcohol ("OVI") from the Cleveland Municipal Court. For the reasons that follow, we affirm.

I.   Procedural History and Substantive Facts

**{¶2}** Cunningham was charged with OVI and failure to control, in violation of Cleveland Codified Ordinances 433.01 and 431.34(a), respectively. Cunningham filed a motion to suppress, requesting suppression of "any and all reported failures or refusals of field sobriety tests performed" after the motor vehicle collision in which Cunningham was involved. The court held a hearing in which it heard testimony from the arresting officers, and it viewed video taken from the officers' body cameras. The trial judge was provided a copy of the National Highway Traffic Safety Administrative ("NHTSA") manual for the administration of field sobriety tests, and the defendant referred to the manual during counsel's cross-examination of the police officers.

**{¶3}** Cleveland police officer Daniel McCandless testified on behalf of the city at the suppression hearing. Officer McCandless testified that he received training through the State Highway Patrol on administering field sobriety tests and the Intoxilyzer 8000, which is the BAC breath test. He is familiar with the NHTSA standards for the field sobriety tests, such as the horizontal gaze nystagmus ("HGN") test, walk-and-turn test ("WAT"), and the one-legged stand ("OLS") test, and he has conducted several OVI traffic stops during his employment with the Cleveland Police Department.

**{¶4}** On September 25, 2016, Officer McCandless arrived at the scene of a motor vehicle collision on E. 105th Street and Superior Avenue. Fire and emergency medical service ("EMS") were on the scene. Officer McCandless observed two vehicles in the intersection. The second vehicle, later identified as Cunningham's vehicle, was immobile. Officer McCandless spoke with the victim, Darryl Miles, and he then spoke with Cunningham, who was sitting inside the EMS truck, and Cunningham's passenger. The officer testified that Cunningham was "very, very emotional" and she "wouldn't calm down." He smelled alcohol

on her breath and asked Cunningham if she had been drinking. He requested that the other officers who had arrived on the scene conduct field sobriety tests of Cunningham while he cleared the intersection.

{¶5} Officer Lester Webb arrived on the scene to assist Officer McCandless. Officer Webb found Cunningham in the nearby bus shelter. She was "irate," pacing back and forth, and visibly crying. He moved her to a different area where there was no broken glass, and he began to conduct the field sobriety tests. Officer Webb testified that he had recently received 40 hours of training related to the NHTSA standards, which provided the officer with information on how to properly administer field sobriety tests. He had not though performed any field sobriety tests until this night.

{¶6} Officer Webb began with the HGN test, in which he held a stimulus (a pen) approximately 12 to 15 inches from Cunningham's face and asked that she follow the stimulus with her eyes. The officer noted that he was looking for jerking of the eye and he testified that he tried to turn her away from any distracting lights, as required by NHTSA standards, but the fire truck's flashing lights were still visible. He asked Cunningham to stand still, and he asked her if she had any traumatic brain injuries and if she wore contacts. The officer stated that he looked for "smooth pursuit" in her eyes. He also twice checked for "distinct nystagmus at maximum deviation." The officer testified that he observed two "clues" of impairment in the left eye and none in the right eye.

{¶7} On cross-examination, however, Officer Webb conceded that he observed fewer than four clues of impairment, while the manual requires four or more clues as evidence of impairment. Officer Webb also conceded that his verbal instructions to Cunningham were limited to "I am going to put this at your eye and you're gonna watch it," referring to the

stimulus. He did not instruct Cunningham to keep her head still, to keep her feet together, or to keep looking at the stimulus until directed to stop, in accordance with the NHTSA manual. Finally, Officer Webb admitted that, in contravention of the NHTSA manual requiring a subject be faced away from flashing lights, he administered the test to Cunningham while the fire truck's lights were flashing.

{¶8} Officer Webb then administered the WAT test. He testified that he tells a driver to: stand still and not to move until instructed; put his or her hands on the sides of his or her body; take a series of nine heel-to-toe steps, make a series of turns while looking at his or her feet; and return with nine steps. The officer is looking for clues of impairment such as not staring at their feet, their hands going up, not taking steps heel-to-toe, and making improper turns.

{¶9} Video from the officer's body camera that was played at the suppression hearing showed Officer Webb instructing Cunningham not to move until he instructed her to do so and telling her to take nine heel-to-toe steps and return with heel-to-toe steps. The officer initially instructed Cunningham to put her feet together. He then instructed her to stand with her right foot in front of her left foot before correcting her and instructing Cunningham to stand with her left foot in front of her right foot. As Cunningham appeared in the camera, she was in the correct position. Officer Webb also demonstrated the test and the turn for Cunningham. He took only six steps each way. After demonstrating for Cunningham, he reminded her to turn on the ninth step.

{¶10} Officer Webb testified that in performing this test, Cunningham started too early, her feet never touched, she made an improper turn, and she raised her arms up. Officer Webb also testified that Cunningham was "erratic" and what she was saying was "very spontaneous."

He detected an odor of alcohol that he could smell from a couple of feet away. He stated that Cunningham had trouble standing, even when she took off her boots. Officer McCandless observed Officer Webb administer the WAT test. He noted that Cunningham was not looking at her feet or counting her steps and she made an improper turn, noting that he saw "at least three clues" of impairment.

{¶11} On cross-examination, Officer Webb reviewed the NHTSA manual instructions for the WAT test, including the "instructional phase" and the "walking stage," which states that the subject should stand with her feet heel-to-toe and not begin until instructed. The video showed Officer Webb telling Cunningham not to move until instructed. He testified that Cunningham began to "jump[] around the whole time, even after [his instructions]" and that "she doesn't stand still the whole time." The officer testified that Cunningham "[kept] trying to move forward like she wants to do the test." Officer Webb testified that the NHTSA requires the officer to demonstrate the steps to the subject. He noted that he took only six steps, stating that the officers are trained to demonstrate in sets of three. The officer also testified that the manual requires the officer to instruct the subject to count her steps aloud. Officer Webb did not instruct Cunningham to count her steps in this manner; however, the video shows that Officer Webb counted his steps aloud when demonstrating the test. And the video demonstrated that Cunningham was given the instruction to count aloud after she had begun the test. Officer Webb stated that Cunningham "teeters, like a half-step, and then she * * * didn't make the series of small turns. She made * * * an incorrect turn," and that is why he counted her performance as "an incorrect number of steps." Officer Webb also testified that he did not instruct Cunningham to look at her feet while taking the steps, as required by the NHTSA standards.

Finally, Officer Webb testified that he observed Cunningham raise her right arm up slightly for balance, which is a clue of impairment.

{¶12} Officer Webb began to administer the OLS test but Officer McCandless stepped in because, according to Officer McCandless, Officer Webb was struggling with his instructions. Officer McCandless testified that Cunningham was supposed to stand with her feet together, with arms down to her side, and not move until instructed for this test. Officer McCandless testified that Cunningham was not positioning herself as instructed. He stated that Cunningham "wasn't able or wanting to perform the test," despite giving her three opportunities, with shoes on and with shoes off.

{¶13} Following the suppression hearing, and after stating that it considered the three field sobriety tests, statements made during the tests, the probable cause to arrest, and the evidence, which includes the video footage of the officers' body cameras, the trial court denied Cunningham's motion to suppress, in part:

> the court finds that the HGN test did not comply, did not substantially comply with any acceptable standardized testing procedures. The court finds that the Walk & Turn test did substantially comply. The One-legged Stand test was refusal. The court finds that the statements made during the test [were] admissible. And then the court finds that there was probable cause to arrest.

The court advised the parties that it would put its ruling "in an order form for you, outlining [the ruling], and then send it to [the parties]."

{¶14} After the court denied the motion to suppress, in part, Cunningham requested that the matter be set for a jury trial. The failure to control charge was bifurcated, and the case proceeded to a jury trial on the OVI charge.

{¶15} The court heard testimony from Darryl Miles, the victim of the crash, Officer Daniel McCandless, and Officer Lester Webb. The city also presented as evidence video files from the officers' body cameras. Additionally, Cunningham testified on her own behalf.

{¶16} Darryl Miles testified that while he was stopped at a red light on E. 105th Street waiting to turn left onto Superior Avenue, signaling a left turn, someone rear-ended him. When he exited the vehicle to assess the damage, he saw that the other car was wedged up under the bumper of his car. Miles said the driver of the other vehicle, whom he identified in the courtroom as the defendant, Tationa Cunningham, exited her vehicle and "was very irate," crying and screaming. Cunningham accused him of brake-checking her, called him names, and told Miles "that's why old people don't need to drive." Feeling that Cunningham might attack him, Miles crossed the street and flagged down a CMHA police officer for assistance. The CMHA officer called the Cleveland police to the scene, and thereafter, Miles reported what had happened to Cleveland police officer Daniel McCandless.

{¶17} When Officer McCandless arrived on the scene, Cunningham was in an EMS vehicle. Officer McCandless testified that while speaking with Cunningham, he detected the odor of alcohol. He advised Cunningham that he was going to perform field sobriety tests. Then Cunningham's demeanor changed. Officer McCandless stated that Cunningham became more hysterical. Because he had to handle the matter of the vehicles being in the middle of the intersection, Officer McCandless asked another officer who had arrived on the scene to administer the field sobriety tests.

{¶18} Officer Webb testified that when he arrived on the scene of the collision, he saw Cunningham erratically pacing back and forth in the nearby bus shelter. When he approached her, he immediately smelled alcohol on her breath. She was "very frantic," crying, and making

"a lot of hand gestures." He believed her frantic behavior demonstrated a possibility that Cunningham was impaired and that it was not attributed solely to being emotional from the collision. The officer then conducted the WAT field sobriety test. He testified that during the test, Cunningham started too early, she raised her hands, she lost her balance, she did not walk heel-to-toe, and she made an improper turn. He stated that her balance "was all over the place." Thereafter, Officer Webb attempted to administer the OLS test when Officer McCandless intervened and took over. Officer McCandless attempted to administer the OLS test, but Cunningham said she could not do it, she became hysterical, and she refused to do the test.

{¶19} Cunningham was then arrested and transported to jail where she refused a breath test. Officer Webb testified that Cunningham became very uncooperative and threw her jewelry around and almost hit him in the face during booking.

{¶20} The jury found Cunningham guilty of driving under the influence, and the court found her guilty on the bifurcated failure to control charge. The court sentenced Cunningham as follows: (1) 180 days in jail, suspending 177 days, and a fine of $1,000, suspending $600, on the OVI charge; and (2) $75 on the failure to control charge. The court then granted Cunningham driving privileges and stayed her sentence pending this appeal.

## II. Assignments of Error

{¶21} Cunningham raises the following errors for our review:

I. The trial court impeded Appellant's right to present a complete defense when it failed to provide Appellant with a written opinion on the motion to suppress prior to trial.

II. The trial court judge cited to *State v. Homan* for a proposition that is not supported by the opinion, and the scope of cross-examination of both officers should have been broader because *Homan* supports a totality of the circumstances test.

III.  The appellant was denied a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution where the trial court erred in denying the appellant due process of law by suppressing the admission of the NHTSA Manual and not allowing cross-examination concerning the City's witnesses' knowledge of the NHTSA field sobriety testing standards and the suppressed HGN test.

IV.  The trial court improperly denied the suppression of the results of the walk-and-turn test when the record fails to establish substantial compliance with the National Highway Traffic Safety Administration's guidelines on performing that test.

### III.   Law and Analysis

#### A. Findings of Fact

{¶22} In her first assignment of error, Cunningham argues that when the trial court denied her motion to suppress, it did not provide findings of fact on the record and therefore erred by violating Crim.R. 12(F).

{¶23} Crim.R. 12(F) provides that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record."   However, it is well settled in Ohio that in order to invoke the court's duty to issue findings of fact, the defendant must specifically request the essential findings.   *State v. Robinson*, 8th Dist. Cuyahoga No. 90731, 2008-Ohio-5580, ¶ 29; *State v. Martin*, 8th Dist. Cuyahoga No. 89030, 2007-Ohio-6062, ¶13, citing *State v. Brown*, 64 Ohio St.3d 476, 481, 597 N.E.2d 97 (1992); *Bryan v. Knapp*, 21 Ohio St.3d 64, 65, 488 N.E.2d 142 (1986).   Thus, where there is no record of the defendant's request, the trial court has no duty to issue findings of fact.   *Robinson* at ¶ 30.

{¶24} Moreover, the failure to provide findings of fact will not prejudice a defendant where the record provides an appellate court with a sufficient basis to review a defendant's assignments of error.   *State v. Harris*, 8th Dist. Cuyahoga No. 85270, 2005-Ohio-2192, ¶ 18. Crim.R. 12(F) "does not imbue a defendant with the power to force a trial court to issue separate

factual findings when ruling on a motion to suppress if the court's reasoning is set forth in the record and the record as a whole provides an appellate court with sufficient basis for review." *State v. Atkinson*, 8th Dist. Cuyahoga No. 95602, 2011-Ohio-5918, ¶ 23, citing *State v. Moore*, 8th Dist. Cuyahoga No. 92829, 2010-Ohio-3305, ¶ 17; *see also* (holding that where a defendant makes no request for findings in support of a trial court's order denying a motion to suppress, and the trial court does not issue findings, an appellate court errs in reversing a conviction if there is "sufficient evidence demonstrating that the trial court's decision was legally justified and supported by the record").

{¶25} Here, the court held a suppression hearing on December 5, 2016. After the hearing, the court scheduled its ruling for December 18, 2016, at which time, the court, on the record, denied Cunningham's motion to suppress. The court determined that Cunningham's statements were admissible, there was probable cause to arrest the defendant, the HGN test did not comply with NHTSA guidelines, the WAT test did substantially comply with the NHTSA guidelines, and the OLS was a refusal. The court then advised counsel that it would put its ruling "in an order form for you, outlining [the ruling], and then send it to you * * * [p]robably email it to you after it has been journalized." Immediately thereafter, when the court stated that it did not know what the defendant wished to do next, defense counsel advised the court that Cunningham would request a jury trial. And the record reflects that Cunningham filed a jury demand on December 30, 2016. The record, however, is devoid of any request for findings of fact between the court's ruling on the motion to suppress on December 18, 2016, and the commencement of trial on January 19, 2017.

{¶26} Cunningham argues on appeal that the trial judge orally assured defense counsel that her findings would be put in a written order outlining her ruling. We find, however, that

the court's indication that it would reduce its ruling to "order form" is not a promise, sua sponte, of written findings of fact and conclusions of law. Cunningham also argues that she did, in fact, request findings of fact, identifying a portion of the trial transcript in which defense counsel asked the court, "can we get a written opinion from you on the motion to suppress?" We do not find defense counsel's purported request made to the court during the morning session of trial to amount to a timely and proper request for findings of fact.

{¶27} Regardless of any actual request for findings, we find that the transcript from the suppression hearing and the record as a whole provides this court with sufficient basis for review in order to determine the correctness of the court's suppression ruling. *See Robinson,* 8th Dist. Cuyahoga No. 90731, 2008-Ohio-5580, at ¶ 30; *Martin,* 8th Dist. Cuyahoga No. 89030, 2007-Ohio-6062, at ¶ 13. We therefore find that Cunningham was not prejudiced by the trial court's failure to issue findings of fact, and we are able to address the merit of her claims. *Martin*; *State v. Hahn*, 5th Dist. Perry No. 05 CA 17, 2007-Ohio-557, ¶ 40 (finding that where the record is devoid of the trial court's findings of fact, the suppression hearing transcript may provide an appellate court with sufficient basis to determine whether the trial court's decision was supported by competent, credible evidence).

{¶28} Cunningham's first assignment of error is overruled.

### B. Field Sobriety Tests

{¶29} As Cunningham's remaining assignments of error are interrelated, we address them together. Cunningham challenges the trial court's rulings on her motion to suppress. In support, she alleges that the court misapplied the current law concerning the admissibility of the field sobriety tests and the testimony of the arresting officers. She also contends that the trial court erred in finding that the officers substantially complied with the NHTSA standards in

administering the WAT test. Finally, Cunningham argues that the trial court erred when it prevented her from cross-examining the officers concerning the administration of the suppressed HGN test.

**{¶30}** In moving to suppress the results of a field sobriety test, the defendant must provide an "adequate basis" to seek suppression of the results, which include stating the legal and factual bases "'with sufficient particularity to place the prosecutor and [the] court on notice as to the issues contested.'" *State v. Hunter*, 8th Dist. Cuyahoga No. 91110, 2009-Ohio-1239, ¶ 24, citing *State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994); Crim.R. 47. Where the defendant establishes an adequate basis, the prosecutor then bears the burden of demonstrating substantial compliance; and if the prosecutor demonstrates substantial compliance, the burden then shifts to the defendant to overcome the presumption of admissibility. *Hunter* at ¶ 25.

**{¶31}** This court reviews a denial of a motion to suppress under a mixed standard of review that involves questions of law and fact. *Cleveland v. Giering*, 8th Dist. Cuyahoga No. 105020, 2017-Ohio-8059, ¶ 12, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must therefore accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *Giering*; *Burnside*. The reviewing court, however, must independently determine whether those facts satisfy the applicable legal standard. *Id.*

**{¶32}** Under R.C. 4511.19(D)(4)(b), an officer may testify concerning the results of the field sobriety test if the officer administered the test in "substantial compliance" with the testing

standards. Therefore, "in order for the results of the field sobriety tests to be admissible, the city must demonstrate by clear and convincing evidence that the officer performing the testing substantially complied with accepted testing standards." *State v. Hyppolite*, 8th Dist. Cuyahoga No. 103955, 2016-Ohio-7399, ¶ 47, citing *Middleburg Hts. v. Gettings*, 8th Dist. Cuyahoga No. 99556, 2013-Ohio-3536, ¶ 12; *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 42. The city may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28; *see State v. Jackman*, 8th Dist. Cuyahoga No. 89835, 2008-Ohio-1944, ¶ 24 ("Under Ohio law, the state is not required to introduce the NHTSA guidelines or expert testimony.").

{¶33} Substantial compliance is not defined in R.C. 4511.19(D)(4)(b); therefore, courts have some discretion in determining the "'substantiability of the compliance.'" *Hyppolite* at ¶ 48, quoting *State v. Perry*, 129 Ohio Misc. 61, 2004-Ohio-7332, 822 N.E.2d 862, ¶ 45. Thus, a determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis. *Hyppolite*; *Dedejczyk* at ¶ 42.

{¶34} Notwithstanding a court's determination that a police officer did not substantially comply with the NHTSA standards, thus requiring suppression of the test results, the officer's testimony regarding observations made during the defendant's performance on the field sobriety tests is admissible under Evid.R. 701:

> In [*State v.*] *Homan*, [89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952, superseded by statute on other grounds], although we excluded the noncomplying field test results from our consideration, we nevertheless concluded that the totality of the circumstances surrounding the defendant's arrest supported a

finding of probable cause. In particular, we found relevant the officer's observations of the defendant, including the fact that he observed erratic driving, that the defendant's eyes were red and glassy, and that she smelled of alcohol. * * * These observations clearly fall within the realm of Evid.R. 701, since they are rationally based on the perceptions of the witness and are helpful to a clear understanding of a fact in issue.

*State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 11; *Dedejczyk* at ¶ 43.

{¶35} Cunningham contends that the trial court improperly applied *Homan*, and in doing so, it improperly limited the scope of cross-examination of the police officers' observations of her performance of all of the field sobriety tests. We disagree. Upon our review of the record, we find the trial court properly permitted the police officers to testify concerning what they observed upon arriving on the scene of the collision and in conducting the field sobriety tests.

{¶36} Officer McCandless testified that upon arriving on the scene and in speaking with Cunningham, he observed the scene of the motor vehicle accident, he detected an odor of alcohol, and he noted that she became hysterical when he told her that he would conduct field sobriety tests. Officer Webb testified that upon approaching Cunningham in the bus shelter, he immediately smelled alcohol on her breath, Cunningham was "very frantic," crying, making "a lot of hand gestures," and generally behaving in a manner that exceeded typical emotional behavior such that he believed she may have been impaired. This testimony was consistent with those observations permitted by *Homan* and *Schmitt*. The trial court did not err in permitting this testimony.

{¶37} Regarding the HGN test, a police officer must instruct a suspect according to the NHTSA manual as follows:

"[A] police officer should instruct the suspect that they are going to check the suspect's eyes, that the suspect should keep their head still and follow the stimulus with their eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer then checks the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees."

*Cleveland v. Krivich*, 2016-Ohio-3072, 65 N.E.3d 279, ¶ 15 (8th Dist.), quoting *State v. Secoy*, 5th Dist. Muskingum No. CT2008-0065, 2009-Ohio-5100, ¶ 16. Additionally, according to NHTSA standards, the officer must face a suspect away from flashing lights and traffic that is in close proximity to the subject. *State v. Stritch*, 2d Dist. Montgomery No. 20759, 2005-Ohio-1376, ¶ 23.

{¶38} In evaluating the suspect for impairment, the police officer should look for three indicators: "(1) if the eye cannot follow a moving object smoothly, (2) if jerking is distinct when the eye is at maximum deviation, and (3) if the angle of onset of jerking is within 45 degrees of center." *Krivich*, citing *S. Euclid v. Bautista-Avila*, 2015-Ohio-3236, 36 N.E.3d 246, ¶ 11 (8th Dist.).

{¶39} Here, although Officer Webb held a stimulus approximately 12 to 15 inches from Cunningham's face, his instructions to Cunningham were essentially limited to "I am going to put this at your eye and you're gonna watch it." The officer failed to instruct Cunningham to keep her head still, to keep her feet together, and to follow the stimulus until instructed to stop. Moreover, the officer conducted the test while flashing lights were still visible to the suspect. We therefore conclude that the trial court's suppression of the results of the HGN test was proper.

**{¶40}** Cunningham argues that despite the suppression of the results of this test, she should have been permitted to cross-examine the officers concerning the administration of the HGN test and their knowledge of the NHTSA standards regarding the test. According to Cunningham, the exclusion of such testimony deprived her of the right to present a defense.

**{¶41}** Cunningham has asserted on appeal that "if permitted to cross-examine the officers on their conduct in accordance with NHTSA guidelines, [d]efense [c]ounsel would have elicited testimony that the officer observed the [a]ppellant crying and attributed her glassy eyes to the fact that she had been crying." Thus, Cunningham seeks to introduce testimony regarding the administration of the HGN "to explain the effect the officers' conduct had on [the] appellant." This testimony that Cunningham complains was improperly excluded, however, is not relevant to any material fact in dispute, and we cannot say that its exclusion prejudiced Cunningham.

**{¶42}** The Sixth Amendment's right to confront witnesses guarantees a criminal defendant the right to cross-examine witnesses. *Hyppolite*, 2016-Ohio-7399, 76 N.E.3d 539, at ¶ 33, citing *Columbus v. Miller*, 10th Dist. Franklin No. 89AP-111, 1989 Ohio App. LEXIS 3541, 18 (Sept. 12, 1989). This right, however, is not unlimited. Although cross-examination of a witness is a matter of right, the extent of cross-examination concerning an appropriate subject of inquiry is within the sound discretion of the trial court. *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993). "Trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). We review decisions to limit

cross-examination for an abuse of discretion based on the particular facts of each case. *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983).

{¶43} Evid.R. 611(B) provides that cross-examination shall be permitted on all relevant matters and matters affecting credibility. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶44} Here, evidence of why Cunningham was crying is not a fact that is of consequence, particularly in light of the fact that there is no dispute that Cunningham was crying during the administration of the field sobriety tests. What was relevant to the issue in dispute was that the officer observed glassy eyes, glassy eyes may be caused by crying, and Cunningham was crying. On direct examination, Officer McCandless testified as to what he observed upon arriving on the scene. He observed the scene of the motor vehicle accident, the odor of alcohol, and Cunningham crying. He stated, "At first, I thought her eyes were glassy, but she was crying, so, you know, I determined that it might have been from that * * *." Later, on cross-examination, Officer McCandless testified that he observed Cunningham upset and crying, and he reiterated that he attributed the glassy, or "watery," eyes to her crying.

{¶45} So the testimony that Cunningham claims she was deprived of presenting to the jury was, in fact, elicited from Officer McCandless. He acknowledged that Cunningham had been crying, and he attributed her glassy eyes to this fact. Evidence as to the purported reason why Cunningham was crying, i.e., the alleged failure to comply with testing guidelines, is not a fact of consequence as to whether Cunningham operated a motor vehicle while impaired.

{¶46} Moreover, Cunningham testified on her own behalf. She stated that she has "reoccurring depression" and therefore has difficulty controlling her emotions. Cunningham

explained that she was very upset after the collision because she just "totaled" her fiancé's sister's car. And according to Cunningham, when the officers were administering the field sobriety tests, she was "in a state" and "scared." She then explained that the "[c]ops are surrounding me * * * everything is just going on, and it was embarrassing. It was frustrating * * *." She further explained why she had difficulty with the field sobriety tests but the officers "didn't care, because they already had their minds set." Cunningham therefore had ample opportunity to present a defense, and the jury was able to hear the evidence and weigh the credibility of that evidence accordingly.

{¶47} In light of the foregoing, we are unpersuaded that the trial court abused its discretion or violated Cunningham's right to confrontation when it prohibited cross-examination of the officers concerning their administration of the HGN test.

{¶48} Cunningham also contends that the trial court improperly denied her motion to suppress the results of the WAT test. In support, Cunningham first contends that the city failed to introduce the NHTSA manual into evidence or question Officer Webb about the current standards. Secondly, Cunningham contends that Officer Webb failed to conduct the WAT test in accordance with the current NHTSA standards.

{¶49} Regarding the WAT test, the NHTSA manual provides the following instructions:

[A]n officer is required to first instruct the suspect of the initial positioning, which requires the suspect to stand with his arms down at his side, and to place his left foot on a line (real or imaginary). The suspect's right foot is to be placed on the line ahead of the left foot, with the heel of the right foot against the toe of the left foot. The suspect is then told to remain in that position while further instructions are given.

*Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, at ¶ 52, citing *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 43. Additionally, during this test, the

suspect "walks while touching his heel to his toe for every step, counting the nine steps out loud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line." Finally, the officer must demonstrate three heel-to-toe steps. *Brookpark v. Key*, 8th Dist. Cuyahoga No. 89612, 2008-Ohio-1811, ¶ 89.

{¶50} As previously discussed, the city may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. *Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, at ¶ 28.

{¶51} Here, the city did not introduce the manual into evidence. Rather, the officer testified that he had recently received 40 hours of training related to the NHTSA standards, which provided him with information on how to properly administer field sobriety tests. On direct examination, he explained how he instructs an individual, stating that he tells a driver to stand still and not to move until instructed; put his or her hands on the side of his or her body; take a series of nine heel-to-toe steps, make a series of turns while looking at his or her feet; and return with nine steps. The officer testified that he is looking for clues of impairment such as not staring at their feet, their hands going up, not taking steps heel-to-toe, and making improper turns.

{¶52} Additionally, defense counsel elicited testimony concerning the NHTSA standards. Upon reviewing the NHTSA manual on cross-examination, Officer Webb identified the two stages of the WAT test (instructional and walking), reiterated the instructions a police officer must give the driver (i.e., stand heel-to-toe, move only when instructed, take nine heel-to-toe steps, count the steps out loud, and watch his or her feet), noted the officer's requirement that he demonstrate the steps, and he identified clues of impairment (i.e., subject using arms for balance).

{¶53} In light of the above, we find the city provided competent testimony establishing the NHTSA standards for administering the WAT test.

{¶54} Cunningham also contends that Officer Webb did not substantially comply with the NHTSA standards. In support, she argues that he (1) failed to initially instruct Cunningham to keep still until instructed to move, (2) positioned Cunningham with her feet together rather than heel-to-toe, and (3) failed to instruct Cunningham to count her steps out loud and watch her feet while walking.

{¶55} Here, there is no evidence that Officer Webb instructed Cunningham to watch her feet while walking. However, the evidence demonstrates that he told Cunningham not to move until he told her to do so. He also told her to put her hands by her sides and to take nine heel-to-toe steps, a series of small turns, and to return with heel-to-toe steps. Although he initially instructed Cunningham to "put [her] feet together," he corrected himself, and instructed Cunningham to stand with her left foot in front of her right foot. The video shows that prior to taking her first step, Cunningham's feet are in the correct position. Officer Webb also demonstrated the steps for Cunningham. He did not initially instruct her to count her steps aloud; however, during the demonstration, Officer Webb counts his steps aloud. Further, during the test, Officer Webb's partner is heard instructing Cunningham to count aloud.

{¶56} We find on this record that the trial court did not err in finding that Officer Webb substantially complied with NHTSA standards. The results of the WAT test were therefore properly admitted at trial.

{¶57} Cunningham's second, third, and fourth assignments of error are overruled.

{¶58} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY